Justice Breyer,
concurring in part and dissenting in part.
I join Parts I, II, and III of the Court’s opinion. But I disagree with its conclusion in Parts IV and V that the punitive damages award in this case must be reduced.
Like the Court, I believe there is a need, grounded in the rule of law itself, to ensure that punitive damages are awarded according to meaningful standards that will provide notice of how harshly certain acts will be punished and that will help to ensure the uniform treatment of similarly situated persons. See BMW of North America, Inc. v. Gore, 517 U. S. 559, 587 (1996) (Breyer, J., concurring). Legal standards, however, can secure these objectives without the rigidity that an absolute fixed numerical ratio demands. In setting forth constitutional due process limits on the size of punitive damages awards, for example, we said that “few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.” State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U. S. 408, 425 (2003) (emphasis added). We thus foresaw exceptions to the numerical constraint.
In my view, a limited exception to the Court’s 1:1 ratio is warranted here. As the facts set forth in Part I of the Court’s opinion make clear, this was no mine-run case of reckless behavior. The jury could reasonably have believed that Exxon knowingly allowed a relapsed alcoholic repeatedly to pilot a vessel filled with millions of gallons of oil through waters that provided the livelihood for the many plaintiffs in this case. Given that conduct, it was only a matter of time before a crash and spill like this occurred. And as Justice Ginsburg points out, the damage easily could have been much worse. See ante, at 524 (opinion concurring in part and dissenting in part).
*526 The jury thought that the facts here justified punitive damages of $5 billion. See ante, at 480-481 (opinion of the Court). The District Court agreed. It “engaged in an exacting review” of that award “not once or twice, but three times, with a more penetrating inquiry each time,” the case having twice been remanded for reconsideration in light of Supreme Court due process cases that the District Court had not previously had a chance to consider. 296 F. Supp. 2d 1071, 1110 (D. Alaska 2004). And each time it concluded “that a $5 billion award was justified by the facts of this case,” based in large part on the fact that “Exxon’s conduct was highly reprehensible,” and it reduced the award (slightly) only when the Court of Appeals specifically demanded that it do so. Ibid.; see also id., at 1075.
When the Court of Appeals finally took matters into its own hands, it concluded that the facts justified an award of $2.5 billion. See 472 F. 3d 600,625 (CA9 2006) (per curiam). It specifically noted the “egregious” nature of Exxon’s conduct. Ibid. And, apparently for that reason, it believed that the facts of the case “justifie[d] a considerably higher ratio” than the 1:1 ratio we had applied in our most recent due process case and that the Court adopts here. Ibid.
I can find no reasoned basis to disagree with the Court of Appeals’ conclusion that this is a special case, justifying an exception from strict application of the majority’s numerical rule. The punitive damages award before us already represents a 50% reduction from the amount that the District Court strongly believed was appropriate. I would uphold it.